ELECTRONICALLY FILED
Grant County Circuit Court
Geral Harrison, Circuit/County Clerk
2022-Dec-22 10:27:05
27CV-22-136
C07D01 : 19 Pages

## IN THE CIRCUIT COURT OF GRANT COUNTY, ARKANSAS
### CIVIL DIVISION

**PHILLIP S. BALDWIN, Individually and as Special
Administrator of the Estate of Phillip D. Baldwin, Deceased, and
On Behalf of All Others Similarly Situated**                    **PLAINTIFF**

**V.**                    **Case No. 27CV-22-136**

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,
STATE FARM FIRE AND CASUALTY COMPANY,
PATRICK CAMPBELL INSURANCE AGENCY INC., and
PATRICK CAMPBELL, a registered agent**                    **DEFENDANTS**

### FIRST AMENDED COMPLAINT

Comes now the Plaintiff, Phillip S. Baldwin, individually, and as Special Administrator of the Estate of Phillip D. Baldwin, Deceased, and on behalf of all other persons similarly situated, by and through his attorneys, Paul Byrd Law Firm, PLLC, and for his cause of action states:

### I. INTRODUCTION

1.      State Farm has not been a good neighbor. They and their agent separate defendant Patrick Campbell have knowingly and fraudulently engaged in a scheme to deprive their own insured, Phillip D. Baldwin, of the first-party insurance coverage that his estate is entitled. They have used systematic company-wide policies and nefarious tactics such as forging insurance documents related to Uninsured Motorist ("UM") coverage, knowingly misrepresenting available UM and Underinsured Motorist ("UIM") coverages to deprive Phillip D. Baldwin's estate and others similarly situated out of contracted for, paid for or otherwise payable insurance that should have been available after his death, and employed other methods of hiding, denying, or concealing coverage. The estate and

1

family of Phillip D. Baldwin have suffered enough and should not have to put up with a denial of benefits based on lies and deceit.

## II. PARTIES

2.      Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

3.      Plaintiff, Phillip S. Baldwin, a citizen and resident of Grant County, Arkansas, was appointed Administrator of the Estate of Phillip D. Baldwin, deceased, by the Grant County Probate Court on September 9, 2020.

4.      Defendant State Farm Mutual Automobile Insurance Company is a foreign corporation founded in Illinois. It is and at all times relevant was, an insurer engaged in the business of insurance, authorized to do business in Arkansas and actually doing business in Arkansas and Grant County.

5.      Defendant State Farm Fire and Casualty Company is a foreign corporation founded in Illinois. It is and at all times relevant was, an insurer engaged in the business of insurance, authorized to do business in Arkansas and actually doing business in Arkansas and Grant County.

6.      Defendant Patrick Campbell Insurance Agency Inc. is an Arkansas corporation with its principal place of business in Grant County.

7.      Defendant Patrick Campbell is and at all material times referenced herein been a citizen and resident of Grant County and the state of Arkansas.

## III. JURISDICTION AND VENUE

8.      Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

9.     Substantial acts giving rise to the causes of action asserted herein occurred in this State and within this venue.

10.    This Court has personal jurisdiction over the parties pursuant to Ark. Code Ann. § 16-4-101 and subject matter jurisdiction pursuant to Amendment 80 of the Arkansas Constitution. Circuit court jurisdiction is proper under Ark. Code Ann. § 16-13-201 that states circuit courts have original jurisdiction over all actions and proceedings to enforce civil rights or the redress of civil wrongs, unless exclusive jurisdiction is given to other courts. Jurisdiction is also proper under Ark. Const., Art. 7, § 11, that states circuit courts have jurisdiction in all civil cases.

11.    Venue is proper pursuant to Ark. Code Ann. § 16-60-101(a)(1) because Grant County is where the events giving rise to the cause of action in this Complaint occurred and where the Plaintiff resides, where Phillip D. Baldwin deceased resided, and separate defendant Patrick Campbell resides, along with Patrick Campbell Insurance Agency, Inc.

**IV. FACTS**

12.    Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

13.    On June 18, 2020, Phillip D. Baldwin was driving his motorcycle on Highway 46 in Grant County, Arkansas, when Richard Brewer drove a county vehicle across the centerline into Mr. Baldwin's lane and struck him.  Mr. Baldwin died of his injuries.

14.    At all times relevant Phillip D. Baldwin was a State Farm insured under policy number 344 6493-C05-04.  On or about September 29, 2020, State Farm denied any and all coverage to Phillip D. Baldwin, stating that the policy in question carried only

liability coverage for his motorcycle according to their letter dated the same.  State Farm included with this letter a rejection form—purported to be signed by Phillip D. Baldwin— rejecting uninsured and underinsured motor vehicle coverage; medical payments coverage; death, dismemberment, and loss of sight coverage; and total disability coverage. However, the signature on this form does not belong to Mr. Baldwin.

15.    State Farm and Patrick Campbell engaged in a strategy to prevent Phillip D. Baldwin from recovering under first party policies for UM and UIM coverage.

16.    Plaintiff has requested all of the deceased's policies with State Farm to determine if there were any signed waivers for UM/UIM in any of those other policies to see if this was consistent behavior and or if there were any policies that contained language that prohibited stacking. State Farm has to date refused to produce all of the deceased's policies.

17.    State Farm and Patrick Campbell altered Phillip D. Baldwin's policy without consent by forging his signature on its rejection form.



**3 known and authentic signatures of Phillip Baldwin**



**State Farm's alleged signature of Phillip Baldwin on rejection form**

### IV. CAUSATION OF PHILLIP D. BALDWIN'S INJURIES AND DEATH

18.    Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

19.    The injuries and damages sustained by Plaintiff, more particularly described below, were produced in a natural and continuous sequence from the underinsured motorist and State Farm's violations of one or more of the below-described independent duties to Plaintiff.

20.    The injuries and damages sustained by Plaintiff were a probable consequence from the underinsured motorist actions in violation of one or more of the below-described independent duties. Further harm was caused by State Farm's violations of one or more of the below-described independent duties to Plaintiff.

21.    The underinsured motorist should have foreseen and anticipated that a violation of one or more of the below-described independent duties would constitute an appreciable risk of harm to others, including Plaintiff. State Farm should have foreseen and anticipated that their actions would further the harm experienced by the plaintiff.

22.    If the underinsured motorist had not violated one or more of the above-described independent duties for Plaintiff, then Plaintiff's injuries and damages would not

have occurred. If State Farm had not violated their duties plaintiff would not have been wrongfully denied the innumerable benefits to which he was untitled under law.

## V. COMPENSATORY DAMAGES SUSTAINED BY PLAINTIFF

23.    Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

24.    The injuries and damages sustained by Plaintiff as a result of the underinsured motorist and State Farm, include, but are not limited to, the following:

      a.    Death

      b.    Property damage including loss of use;

      c.    Medical expenses incurred in the past;

      d.    Physical pain and suffering experienced in the past;

      e.    Loss of income in the past and reasonably expected to be experienced in the future;

      f.    Mental anguish experienced in the past.

## VI. PHILLIP D. BALDWIN'S UNDERINSURED MOTORIST CLAIM WITH DEFENDANT STATE FARM FIRE AND CASUALTY COMPANY

25.    Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

26.    Grant County, Arkansas, who employed Mr. Brewer, participates in the auto liability and protection coverage of the Association of Arkansas Counties Risk Management Fund (AACRMF) that is a self-insurance risk pool. They tendered their policy limits of $25,000 per statute, but this amount did not come close to making Plaintiff whole.

27.    On or about September 29, 2020, State Farm denied any and all coverage to Phillip D. Baldwin, stating that the policy in question carried only liability coverage for the motorcycle.

## VII. DUTIES OWED BY DEFENDANTS STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, STATE FARM FIRE AND CASUALTY COMPANY, PATRICK CAMPBELL INSURANCE AGENCY INC., AND PATRICK CAMPBELL

28.    Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

29.    The compensatory damages Plaintiff is legally entitled to recover from the underinsured motorist are provided in paragraph 20(a-f) above.

30.    The compensatory damages provided in paragraph 20(a-f) above comport with the applicable law as it relates to the underinsured motorist insurance policy issued by State Farm referred to in paragraph 11 above.

31.    Defendants owed a duty to evaluate Plaintiff's claim in good faith and deal fairly with Plaintiff in performing State Farm's obligations under the insurance policy.

32.    Defendants owed a duty to treat Plaintiff consistently with the requirements of the laws and regulations promulgated by the Arkansas Insurance Department and codified by the Trade Practices Act.

33.    Defendants owed a duty to conduct a full, fair, prompt, and objective investigation of Plaintiff's UIM claim at State Farm's own expense.

34.    Defendants owed a duty to fully, fairly, and promptly evaluate Plaintiff's UM/UIM claim.

7

35.     Defendants owed a duty to avoid denying or underpaying any part of Plaintiff's UM/UIM claim based upon insufficient information, speculation, fraudulent, or biased information.

36.     Defendants owed a duty to provide Plaintiff with a written explanation pointing to facts and policy provisions supporting a denial of claim.

37.     Defendants owed a duty under Arkansas law to avoid preventing, hindering, or delaying the performance of its obligations owed to Plaintiff and other policyholders.

38.     Defendants owed a duty to Plaintiff to avoid misrepresenting facts or policy provisions.

39.     Defendants owed a duty to Plaintiff to avoid attacking the character, reputation, and credibility of a person making a claim.

40.     Defendants owed a duty to Plaintiff to explain how it interprets its policy and how it handles similarly situated claims.

41.     Defendants owed a duty to Plaintiff to adhere to Arkansas law for claims arising in Arkansas.

42.     Defendants owed a duty to Plaintiff to avoid unfair claims settlement practices as defined in the Trade Practices Act.

43.     Defendants owed a duty to Plaintiff to adhere to the rules and regulations of the Arkansas Insurance Department.

44.     Defendants owed a duty to give the benefit of the doubt to its insured when making claims decisions.

8

45.     Failure to discharge these duties and obligations constitutes evidence Defendants prevented, hindered, or delayed performance of its obligations owed under the insurance policy.

46.     In this case, Defendants failed to discharge these duties and obligations owed to Plaintiffs.

47.     There is no good faith defense to Defendants' actions, and these actions were not the result of an honest error in judgment.

48.     This conduct resulted in his claim being denied.  Based on this action, Defendants have committed fraud, bad faith, engaged in unfair claims and settlement practices, and breached several of the below mentioned duties to its insureds.

49.     Defendants engaged in a practice in which someone forged the signature of its insured on the rejection form.  Not only did Defendants reject the coverage without authorization, but it failed to notify its insured of the rejection until a claim was made for coverage.

**VIII. INFORMATION LIKELY TO BE IN THE POSSESSION OF DEFENDANTS STATE FARM FIRE AND CASUALTY STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, PATRICK CAMPBELL INSURANCE AGENCY INC., AND PATRICK CAMPBELL**

50.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

51.     Most of the proof of Plaintiff's claims will be uniquely and solely in the possession of Defendants.

52.     Because the facts of this case are peculiarly within the opposing party's knowledge, Plaintiff pleads these allegations generally as to the malice, intent, knowledge, and state of mind of Defendants.

9

53.     Such allegations have evidentiary support arising out of the facts of this case, and Plaintiff believes such allegations will have further evidentiary support after a reasonable opportunity for further investigation and discovery from Defendants.

## IX. CLASS ALLEGATIONS

54.     Plaintiff brings this action against State Farm Defendants pursuant to Rule 23 of the Arkansas Rules of Civil Procedure on behalf of themselves and all others similarly situated ("The Class" or "The Proposed Class"). Plaintiff seeks to certify a class defined as follows:

> **All Arkansas residents who were insured by State Farm, were injured in a motor vehicle accident due to the fault of another, and had their signatures fraudulently forged in an attempt to waive UM/UIM coverages.**

55.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate. ·

56.     Excluded from the Class are:

a.  Defendant and any entities in which Defendant has a controlling interest;

b.  Any entities in which Defendant's officers, directors, or employees are employed and, any of the legal representatives, heirs, successors, or assigns of Defendant;

c.  The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer assigned to this case;

d.  Persons or entities with claims for personal injury, wrongful death, and/or emotional distress as a result of State Farm's practices;

e.  All persons or entities that properly execute and timely file a request for exclusion from the Class;

10

      f.  Any attorneys representing the Plaintiff or the Class; and

      g.  All governmental entities.

57.    Defendant State Farm subjected Plaintiff and the Proposed Class members to the same unfair, unlawful, and deceptive practices and harmed them in the same manner. The conduct described above is the Defendant's standard and undisputed business practice.

**(1) Numerosity**

58.    The individual class members are so numerous that joinder of all members is impracticable. The Defendant State Farm has branches and agencies in Arkansas, including many within Grant County, and has hundreds of thousands of insureds in Arkansas and throughout the United States. The individual class members are ascertainable as the names and addresses of all class members can be identified in the business records maintained by the Defendant. Plaintiff does not anticipate any difficulties in the management of the action as a class action.

**(2) Commonality**

59.    The claims made by Plaintiff meet the commonality requirement because they present shared questions of law and fact and resolving these questions will resolve the class-wide litigation. These shared questions predominate over individual questions, and they include, without limitation:

    I.    Whether State Farm misrepresented insurance coverage available to claimants on a common, systemic, corporate-wide basis, and/or provided incentives to agents or agencies to do so, and/or negligently failed to train agents and/or agencies on the proper methods to find and determine all available coverage.

2.    Whether State Farm forged rejection of insurance forms or applications of its insureds, on a common, systemic, corporate-wide basis, and/or provided incentives to agents or agencies to do so.

3.    Whether State Farm breached its contracts with Plaintiff and Class by engaging in the conduct identified above.

4.    Whether State  Farm owed a duty to the class members under the applicable statutes and law; and

5.    Whether and to what extent State Farm has been unjustly enriched as a result of State Farm's unfair practices complained of herein.

**(3) Typicality**

60.    Plaintiff is a member of the Proposed Class. Plaintiff's claims are typical of the claims of the proposed Class because of the similarity, uniformity, and common purpose of the unlawful conduct of Defendant State Farm. Each class member has sustained and will continue to sustain damages in the same manner as Plaintiff as a result of Defendant's wrongful conduct.

**(4) Adequacy**

61.    Plaintiffs will fairly and adequately represent and protect the interests of the Classes in that they have no disabling conflicts of interest that would be antagonistic to those of the other members of the Classes. Plaintiffs seek no relief that is antagonistic or adverse to the members of the Class and the infringement of the rights and the damages they have suffered are typical of other Class members.

**(5) Predominance and superiority**

62.    The class litigation is an appropriate method for fair and efficient adjudication of the claims involved. Class action treatment is superior to all other available methods for the fair and efficient adjudication of the controversy alleged

12

herein; it will permit a large number of class members to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort and expense that hundreds of individual actions would require. Class action treatment will permit the adjudication of relatively modest claims by certain class members, who could not individually afford to litigate a complex claim against large corporate defendants. Further, even for those class members who could afford to litigate such a claim, it would still be economically impractical.

63.     The nature of this action and the nature of Arkansas laws available to Plaintiff and the Class make the use of the class action device a particularly efficient and appropriate procedure to afford relief to Plaintiff and the Class for the wrongs alleged because Defendant State Farm would necessarily gain an unconscionable advantage since it would be able to exploit and overwhelm the limited resources of each individual Class member with superior financial and legal resources; the costs of individual suits could unreasonably consume the amounts that would be recovered; proof of a common course of conduct to which Plaintiff was exposed is representative of that experienced by the Class and will establish the right of each member of the Class to recover on the cause of action alleged; and Individual actions would create a risk of inconsistent results and would be unnecessary and duplicative of this litigation.

64.     The class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Because of the number and nature of common questions of fact and law, multiple separate lawsuits would not serve the interest of judicial economy.

65.     Additionally, there is a widespread and systemic problem within State Farm and their agencies in Arkansas and across the United States involving the forging and alteration of policy documents. This UM/UIM rejection forgery tactic is widespread and has occurred at many State Farm agencies throughout Arkansas and the United States.

66.     For instance, as alleged in *Linda Brown v. State Farm Mutual Automobile Insurance Company*, Shelby County (Kentucky) Circuit Court, 18-Cf-469, those within the office of State Farm agent Jim O'Donoghue forged Ms. Brown's signature numerous times on different UM rejection forms.

67.     In the Kentucky case of *Megan Whiteside v. State Farm Mutual Automobile Insurance Company*, Jefferson County (Kentucky) Circuit Court, I 8-CI-4492, someone forged Ms. Whiteside's signature and her mother's signature on UM rejection letters as well as the dates of August 28 and August 28, 2017.

68.     There is another case from Florida, *Johnson v. Stanley White Ins.*, 2nd Judicial District Court of Florida, 684 So. 2d. 248, in which State farm was alleged to have forged signatures on UM/UIM forms to deny coverage.

## X. COUNT 1 - BREACH OF CONTRACT

69.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

70.     Defendants breached the insurance contract by failing to pay under uninsured or underinsured insurance policies that were available under that contract, by relying on a forged UM/UIM rejection to deny coverage.

71.     As a result of Defendants' breach of contract, Plaintiff is entitled to compensatory damages in an amount to be determined after a trial by jury.

## XI. COUNT 2 - BAD FAITH

72.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

73.     Defendants owed a duty of good faith and fair dealing to Phillip D. Baldwin in carrying out its contractual obligations to provide insurance coverage.

74.     Plaintiff has requested all of the deceased's policies with State Farm to determine if there were any signed waivers for UM/UIM in any of those other policies to see if this was consistent behavior and or if there were any policies that contained language that prohibited stacking. State Farm has to date refused to produce all of the deceased's policies.

75.     Defendants failed to carry out its obligation of good faith and fair dealing by deceiving Phillip D. Baldwin about coverage available to him and by forging the UM/UIM rejection forms.

76.     Defendants' actions demonstrated a reckless disregard to the rights of Phillip D. Baldwin.

77.     As a direct and proximate result of Defendant's unfair or deceptive act, Plaintiff was damaged.

## XII. COUNT 3 - FRAUD

78.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

79.     Defendants intentionally implemented a strategy to avoid paying out first-party claims by forging Mr. Baldwin's signature to reject uninsured and/or underinsured insurance coverage.

80.     Plaintiff reasonably relied on Defendants' representation regarding available coverage.

81.     Defendants' false representations were material to Plaintiff because it precluded the very insurance coverage Plaintiff had sought to obtain.

82.     Defendants actively concealed these material facts to pad and protect its profits and to avoid paying insurance claims.

83.     On information and belief, Defendants have still not made full and adequate disclosures and continues to attempt to defraud Plaintiff by concealing material information regarding the insurance coverage available.

84.     Because of the concealment and/or suppression of the facts, Plaintiff has sustained damages.  Accordingly, Defendants are liable to Plaintiff for damages in an amount to be proven at trial.

85.     Defendants' actions were done wantonly, maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff, and the conduct as alleged warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future that is to be determined according to the proof.

### XIII. AMOUNT OF DAMAGES

86.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

16

87.   Plaintiff's injuries and damages are in excess of the minimum amount required for federal court jurisdiction in diversity of citizenship cases, for which Plaintiff should be awarded a judgment as against Defendants in an amount to fully and fairly compensate Plaintiff for each and every element of damages that has been suffered.

## XIV. PUNITIVE DAMAGES

88.   Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

89.   Plaintiff is entitled to recover punitive damages in accordance with Arkansas law, based upon the Defendants' disregard for the safety of Plaintiffs and others, causing or contributing to catastrophic and permanent injuries. Defendants' wanton and reckless acts and omissions occurred under circumstances where their conduct exhibited such a conscious indifference to the consequences that malice may be inferred and would naturally and probably result in injury or damages to Plaintiffs. Defendants knew or should have known, in light of the surrounding circumstances, that their conduct would naturally and probably result in catastrophic and serious injury and that it continued such conduct in reckless disregard for the consequences from which malice may be inferred.

90.   In addition to actual, special, consequential and compensatory damages, Plaintiffs demand a judgment against Defendants for punitive damages in an amount necessary and sufficient to deter Defendants from the above-described conduct and to punish Defendants for its willful, wanton, gross, flagrant, reckless, outrageous, and egregious conduct.

## XV. DEMAND FOR JURY TRIAL

91.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

92.     Plaintiff demands a jury trial for all issues of fact presented by this action.

## XVI. RESERVATION OF ADDITIONAL CLAIMS

93.     Plaintiff incorporates by reference herein the preceding paragraphs as though stated word-for-word.

94.     Plaintiff reserves the right to plead further upon completion of discovery to state additional claims and to name additional parties to this action.

WHEREFORE, Phillip S. Baldwin prays that after a jury trial of this action that Phillip D. Baldwin's estate be awarded the following:

a.      A judgment against Defendants in such an amount that will fully and fairly compensate plaintiffs for all of the above-described compensatory damages and for punitive damages against Defendant, in an amount in excess of that required for federal court jurisdiction in diversity of citizenship cases;

b.      A judgment and verdict against Defendants awarding exemplar or punitive damages as permitted by law;

c.      All costs expended herein including attorneys' fees and any expert costs and fees as permitted by law;

d.      All pre- and post-judgment interest award against the Defendants to compensate for loss of money and to the extent of and for the reasons permitted by law; and

e.      All other proper relief to which they may be entitled in the premises.

Respectfully Submitted,

Paul Byrd, ABN 85020
Patrick Kirby, ABN 88125
Sara Silzer ABN 98118

18

Jonathan Hutto, ABN 2020143
**Paul Byrd Law Firm, PLLC**
415 North McKinley, Suite 210
Little Rock, AR 72205
Phone: (501) 420 3050
Fax: (501) 420 3128
Paul@PaulByrdLawFirm.com
Patrick@PaulByrdLawFirm.com
Sara@PaulByrdLawFirm.com
Jonathan@PaulByrdLawFirm.com


By:    /s/ Paul Byrd
          Paul Byrd, Bar No. 85020